**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

|  |  |
|---|---|
| **PROFESSIONAL SOLUTIONS INSURANCE COMPANY,** | : <br> : <br> : |
| Plaintiff, | : Case No. 16-cv-09868 <br> : |
| -vs- | : District Judge: <br> : The Hon. Harry D. Leinenweber |
| **DALE GIOLAS, M.D., and STACI FERGUSON,** | : <br> : Magistrate Judge: <br> : The Hon. Jeffrey T. Gilbert |
| Defendants. | : |

**DEFENDANT DALE GIOLAS' MEMORANDUM OF LAW**
**IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

**I.**
**Introduction**

In this case, Plaintiff Professional Solutions Insurance Company ("PSIC") has filed a Complaint for Declaratory Judgment, alleging that it has no duty to defend Dale Giolas, one if its insureds, in a three-count lawsuit now pending in Cook County Circuit Court. More specifically, PSIC's main contention is that because Giolas, who is a psychiatrist, is being sued by one of his patients for Sexual Exploitation, Gender Violence, and Battery, none of the counts trigger coverage under the policy, or coverage falls under one or another of the policy's exclusions.

Defendant Giolas submits, and demonstrates below, that none of Plaintiff's arguments have merit, and, that in any event, the policy language explicitly covers Defendant for the precise claims made by the Plaintiff in the underlying tort case. Moreover, because PSIC is obligated to defend Giolas, and the underlying tort case requests both compensatory and punitive damages, PSIC is in an unavoidable conflict of interest. That is because the policy in question excludes the insurer's liability for punitive damages, while the underlying Complaint seeks both compensatory and punitive damages. As a result, PSIC should relinquish control of the defense and reimburse Giolas for the cost of independent counsel.

In light of the foregoing, Defendant Giolas submits that he is entitled to summary judgment finding that 1) PSIC is contractually obligated to defend him in the underlying tort suit, and 2) PSIC should relinquish control of the defense to an independent counsel to be retained at PSIC's expense.

## II.
## The Terms of the Policy Require Plaintiff To Defend Giolas In The Underlying Tort Suit

Defendant Giolas begins with first principles. Under well-established Illinois law, an insurer may refuse to defend only when the allegations of the lawsuit "cannot possibly cover the liability arising from the facts alleged." *Illinois Emcaso Insurance Co. v. Northwestern National Casualty Co.*, 337 Ill. App. 3d 356, 360 (2003). If the

underlying Complaint alleges facts within or potentially within coverage, the insurer is obligated to defend its insured even if the allegations are groundless, false or fraudulent. *United States Fidelity & Guaranty Co. v. Wilkin Insulation Co.*, 144 Ill. 2d 64, 73 (1991). It is the burden of the insurer to affirmatively prove that an exclusion in an insurance policy applies. *Pekin Insurance Co. v. Miller*, 367 Ill. App. 3d 263, 267 (2006). Provisions in insurance policies that exclude or limit coverage must be construed liberally in favor of the insured and against the insurer. "[W]here an exclusionary clause is relied upon to deny coverage, its applicability must be clear and free from doubt because any doubts as to coverage will be resolved in favor of the insured." *International Minerals & Chemical Corp. v. Liberty Mutual Ins. Co.*, 168 Ill. App. 3d 361, 367 (1988). Any doubts as to coverage must be resolved in favor of the insured. *Bituminous Casualty Co. v. Fulkerson*, 212 Ill. App. 3d 556, 562, 571 N.E.2d 262 (1991). Any ambiguity in the policy must be construed in favor of the insured. *Johnson v. Davis*, 377 Ill. App. 3d 602, 606-07, 883 N.E.2d 521 (2007).

With these fundamental insurance precepts as a framework, both the language of the policy in issue, and the law, require a finding that PSIC is contractually obligated to defend Giolas in the underlying tort case.

One of the provisions of the subject policy, which, remarkably, Plaintiff actually relies upon is as follows:

Section VIII. Exclusions.

This Policy does not apply to liability of an Insured or to any Damages, Incidents, Claims or Suits arising out of, based upon or attributable to any of the following:

5. Sexual impropriety, sexual intimacy, sexual assault, sexual harassment or any other similarly defined act. **However, notwithstanding the foregoing, the Insured shall be protected under the terms of this Policy as to any Claim and or allegation which may be covered by the Policy upon which any Claim or Suit may be brought against the Insured, for any such alleged behavior by an Insured unless a judgment or a final adjudication adverse to the Insured shall establish that such behavior occurred as an essential element of the cause of action so adjudicated**. (As amended by the Illinois Amendatory Endorsement, Form PSIC-CM-IL-01 03/11). (Emphasis added).

(Plaintiff's Complaint, Dkt. No. 1, ¶ 13)

Defendant Giolas interprets this provision (and submits that it is the only reasonable interpretation) as providing that, notwithstanding the exclusion for "sex"-related acts, if the insured is sued for claims relating to such acts in the course of rendering professional services (see ¶ 11 of Plaintiff's Complaint), the insured will be covered unless a final adjudication establishes that such behavior actually occurred, and was an essential element of the cause of action.

Of course, the underlying causes of action remain pending and unresolved in the Circuit Court of Cook County (Statement of Facts, ¶ 4). Therefore, not only does the above exclusion relied upon by PSIC not apply, the exclusionary language contains an affirmative promise that such claims will fall within the contractual coverage unless and until a judgment is entered finding that the insured actually is

4

guilty of those acts. Even if this is not the "only" reasonable interpretation of the policy provision at issue, it is certainly one reasonable interpretation of the policy language. And if the provision is found by the Court to be ambiguous, the law is that all such provisions are construed in favor of the insured and in favor of coverage. *Bituminous Casualty Co., supra*, 212 Ill. App. 3d at 562; *Johnson v. Davis, supra*, 377 Ill. App. 3d at 606-07.

## III.
## Plaintiff's Other Bases For Refusal To Defend
## Are Without Merit

The essential bargain between the insurer and the insured in this case is spelled out in Section II of the Policy (Statement of Facts, ¶ 6). It provides as follows:

> In return for payment of premium and subject to all the terms of this Policy and the exclusions stated in Section VIII. Exclusions, We will pay on behalf of an Insured all sums in excess of the Deductible(s) to which this Insurance applies and for which an Insured becomes legally obligated to pay as Damages because of an Injury caused by an Incident in the performance of Professional Services by You or someone for whom You are legally responsible as provided in this Policy.

"**Incident**" is defined in the policy as

> Incident means any negligent omission, act or error in the providing of Professional Services. All such omissions, errors or acts causally related to the rendering of or failure to render Professional Services to one person shall be considered one Incident. Causally related acts, errors or omissions that have a common cause or form a causal chain of events shall be considered one Incident.

"**Injury**" is defined in the policy as bodily injury, sickness, disease or death sustained by any one person. (Statement of Facts, ¶ 6).

In this case, the underlying Complaint charges Defendant Giolas with, *inter alia*, "touching" and "invading" the state court Plaintiff sexually while she was being medically treated by Giolas for attention deficit disorder, major depression disorder, generalized anxiety disorder and post-traumatic stress disorder. (Plaintiff's Complaint, Ex. A, Elec. Dkt. No. 1, pp. 8-15, ¶ 10). Specifically, the state court Plaintiff alleges that:

> At various times in the course of treatment, Defendant prescribed Vyvanse and Adderall, which are Schedule II controlled substances; Wellbutrin XL, and Klonopin for Plaintiff.
>
> * * * * *
>
> In February 2016, Plaintiff obtained a second opinion about the medical treatment she was receiving from Defendant. The consulting physician advised her that her medical records were not carefully kept and that the mixture of drugs Defendant had prescribed for her could be dangerous.
>
> Defendant repeatedly touched and invaded Plaintiff sexually. The conditions under which he did so were coercive because a he was treating and medicating her for various psychiatric conditions at the time, giving him undue influence over her.

(Underlying Complaint, ¶¶ 11, 14, 25; Dkt. No. 1, Ex. A, pp. 10-12).

In other words, the state court Plaintiff alleges that, in the course of rendering professional medical treatment, Defendant Giolas committed certain "omissions, acts or errors" which caused her injury. This is precisely the kind of claim Plaintiff promised to cover in the various provisions of the policy, unless Defendant had

already been found guilty of all of the alleged sexual acts by a court. (See, Section II of Policy ¶¶ 13, 14, 23; Section VIII of Policy, ¶ 5).

Of course, the fact that the state court Plaintiff didn't call Defendant's alleged conduct "medical malpractice" is not determinative of whether Plaintiff is obligated to defend Giolas. The court looks to the allegations of fact, not the names the underlying Plaintiff attached to those actions. "The question of coverage should not hinge on the draftsmanship skills or whims of the plaintiff in the underlying action." *American Economy v. DePaul University*, 890 N.E.2d 582, 587, 383 Ill. App. 3d 172 (2008).

Defendant contends that the foregoing obviates all of the asserted bases for denying coverage found in Plaintiff's Complaint For Declaratory Judgment. The underlying Complaint alleges an *injury* (sexual touching or battery; emotional distress) caused by an *incident* (negligent acts or errors, i.e., improper keeping of medical records; inappropriate use of drugs, inappropriate relationship) occurring during the performance of professional services (treatment for depression, anxiety).

Contrary to Plaintiff's pleading (i. e., "Wherefore clauses A-D"; Plaintiff's Complaint, Dkt. No. 1, Ex. A., pp. 5-6), there is injury caused by an incident (or incidents) occurring in the course of Defendant's rendering of professional services (A); The names the state court Plaintiff attaches to the various causes of action are not determinative of the coverage issue; Plaintiff alleges various negligent acts in

the course of Defendant's rendering of professional services (B); Emotional distress is a form of "sickness" and the underlying Complaint also alleges bodily injury from sexual touching (for which Plaintiff's policy promises coverage unless and until it is proven that Defendant actually committed those acts) (C); The sexual impropriety exclusion does not prevent coverage (in fact it provides coverage until guilt is adjudicated) (D).

In sum, liberally construing the allegations of the Complaint in favor of Defendant Giolas, the allegations of the Complaint fall within, or potentially within the coverage provided by PSIC's policy.

However, Plaintiff also invokes the "intentional acts exclusion" as a reason to deny coverage (E). But any such claim is premature in this proceeding according to Illinois law. In a seminal case, *Maryland Casualty Company Co. v. Peppers*, 64 Ill. 2d 187, 197 (1976) (which became known as the "Peppers Doctrine"), the Illinois Supreme Court decided that it is generally inappropriate for a court considering a declaratory judgment action to decide issues of ultimate fact that could bind the parties to the underlying litigation. In this case, whether Defendant Giolas acted intentionally (or even whether he in fact touched the state court Plaintiff sexually) is hotly contested. (*See*, Defendant's Answer to Underlying Complaint; Defendant's Answer, Elec. Dkt. No. 11, Ex. A). These issues are ultimate facts which could be used as collateral estoppel against Defendant Giolas if decided by this Court. Under

8

*Peppers*, Plaintiff's invocation of the "intentional act" exclusion is premature and should be rejected.

## IV.
## Defendant Is Entitled To Independent Counsel
## Due to PSIC's Conflict of Interest

Finally, if Plaintiff is legally obligated to defend Defendant, under well-established law in Illinois, Plaintiff is in an irreparable conflict with Defendant. That is because one of the policy provisions allows Plaintiff to avoid any liability for punitive damages. (*See*, Plaintiff's Complaint, Dkt No. 1, par. 13 (13)). However, the underlying Complaint seeks both compensatory *and* punitive damages. In several cases, courts have ruled that in such a situation it is incumbent on the insurer to relinquish control of the defense to independent counsel to be retained at the insurer's expense. See, i.e., *Illinois Municipal League Risk Management Ass'n v. Seibert,* 223 Ill. App. 3d 864, 873-77, 585 N.E.2d 1130 (1992); *Nandorf Inc. v. CAN Insurance Cos.*, 134 Ill. App. 3d 134, 139-40, 479 N.E.2d 988 (1995).

In *Seibert*, the Court explained that the interests of the insurer and insured are not always in harmony and that an insurmountable conflict may arise when it appears that the insurer cannot vigorously defend a claim against the insured. The facts causing that conflict in *Seibert* mirror those here. The policy allowed the insurer to avoid liability for punitive damages. The Court opined:

"Under the present facts, [the insured] bears a significant risk in the litigation because its outcome might result in a large punitive damage award which…would be borne by him…Because…the policy precludes coverage for punitive damages, the [insurer] does not face economic consequences for the potential…punitive damages claim."

The Court thus found a conflict, and ordered that the insurer pay for the [insured's] personally selected counsel to assume control of the litigation. *Seibert*, 223 Ill. App. 3d at 878.

In *Nandorf*, *supra*, the plaintiff in the underlying case sought $5,000.00 in compensatory damages and $100,000.00 in punitive damages. *Nandof*, *supra,* 134 Ill. App. 3d at 135. The *Nandorf* Court also ruled that the insurer should have relinquished control of the defense and reimbursed the costs of independent counsel to represent the insured. 134 Ill. App. 3d at 140.

The same considerations apply in this case. PSIC's policy relieves it from liability for punitive damages. The underlying Complaint seeks both compensatory and punitive damages. In such circumstances, the insurance company has no incentive to vigorously defend Defendant when their exposure is limited to a modest amount of compensatory damages at the same time Defendant faces a substantial punitive damage award. Accordingly, there is an irreparable conflict which can only be remedied if PSIC is required to relinquish control of the defense and reimburse Defendant to retain independent counsel.

## **Conclusion**

For all the foregoing reasons, Defendant **Dale Giolas M.D.** urges this Court to enter summary judgment in his favor and against **Plaintiff Professional Solutions Insurance Company**, finding that Plaintiff is contractually obligated to defend Defendant in the underlying lawsuit, and that PSIC is required to relinquish control of the defense to independent counsel to be retained at PSIC's expense.

Respectfully submitted,

*/s/ Richard D. Grossman*
Richard D. Grossman
Attorney for Defendant Dale Giolas, M.D.

Richard D. Grossman
**Law Offices of Richard D. Grossman**
211 West Wacker Drive
Suite 710
Chicago, IL  60606
(312) 750-9308