IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

PROFESSIONAL SOLUTION
INSURANCE COMPANY,

                Plaintiff,

      v.

DALE GIOLAS, M.D. and
STACI FERGUSON,

              Defendants.

Case No.  16 C 9868

Judge Harry D. Leinenweber

## MEMORANDUM OPINION AND ORDER

This is an insurance coverage dispute arising out of a psychiatrist's alleged sexual misconduct with a patient. Before the Court are Cross Motions for Summary Judgment [ECF Nos. 18-19, 22]. For the reasons stated herein, the Court grants Defendant Giolas' Motion and denies Plaintiff's Motion.

## I. FACTUAL BACKGROUND

Plaintiff Professional Solutions Insurance Company ("PSIC") brought a declaratory action seeking a declaration that it does not have a duty to defend Defendant Dale Giolas, M.D. ("Giolas") in an Illinois state court lawsuit. For the purposes of the coverage dispute and the cross motions before the Court, the facts are undisputed. Both parties filed Rule 56.1(a)(3) statements, but neither filed a Local Rule 56.1(b) response. See, N.D. Ill. L.R. 56.1(a)(3)(C) ("All material facts set forth

in the statement required of the moving party will be deemed to be admitted unless controverted by the [L.R. 56.1(b)] statement of the opposing party."). As such, the Court considers the facts contained in both parties' statements admitted. The Court does not deem any legal conclusions admitted. The facts of the underlying state court action are as follows.

Giolas, a licensed psychiatrist, treated Staci Ferguson ("Ferguson") as a patient from 2011 until early 2016. (*See,* PSIC's 56.1(a)(3) Statement, ECF No. 20 ("PSIC's Fact Statement") ¶ 4.) On August 25, 2016, Ferguson brought a lawsuit in Illinois state court alleging that Giolas repeatedly engaged in improper sexual activity with her while he was treating her. (*See,* Giolas' 56.1(a)(3) Statement, ECF No. 21 ("Giolas' Fact Statement") ¶¶ 1-2; PSIC's Fact Statement ¶¶ 3-4.) Ferguson alleged that Giolas' improper sexual activity violated the Sexual Exploitation in Psychotherapy, Professional Health Services, and Professional Mental Health Services Act, 740 ILCS 140/1 *et seq.*, the Gender Violence Act, 740 ILCS 82/1 *et seq.*, and constituted common law battery. (*See,* Complaint, Ex. A to "Complaint for Declaratory Judgment," ECF No. 1 (the "Underlying Complaint"); *see also,* Giolas' Fact Statement ¶ 1.) Both parties acknowledge that Giolas denies engaging in any sexual activity with Ferguson. (*See,* Giolas' Fact Statement

- 2 -

¶ 3; PSIC's Fact Statement ¶ 5.) After receiving notice of the Underlying Complaint, Giolas tendered it to PSIC, his professional liability insurer. The underlying state court case remains pending. (*See,* Giolas' Fact Statement ¶ 4.)

The insurance policy at issue, entitled Physician and Surgeon Medical Professional Liability Insurance Policy (the "Policy"), was issued by PSIC to Giolas and was in effect when Ferguson filed the Underlying Complaint. (*See,* Policy, Ex. B to Complaint, ECF No. 1 (the "Policy"); PSIC's Fact Statement ¶ 12; Giolas' Fact Statement ¶ 5.) The policy states, in relevant part:

**Section II. Coverage Agreement**

Within the limit of liability shown on the **Declarations**:

In return for payment of premium and subject to all the terms of this **Policy** and the exclusions stated in **Section VIII. Exclusions**, We will pay on behalf of an **Insured** all sums in excess of the **Deductible** to which this insurance applies and for which an **Insured** becomes legally obligated to pay as **Damages** because of an **Injury** caused by an **Incident** in the performance of **Professional Services** by **You** or someone for whom **You** are legally responsible as provided in this **Policy**. The **Injury** must occur on or after the **Retroactive Date** shown on the **Declarations** and before this **Policy** or coverage for an **Insured** terminates. Any **Claim** associated with an **Injury** caused by an **Incident** must be first reported to **Us** in writing during the **Policy Period** or the **Automatic Extended Reporting Period**. The **Injury** must also be caused by an **Insured** under this **Policy**. (*See,* Policy § II.)

The term "Injury" is defined as:

>  [B]odily injury, sickness, disease or death sustained by any one person. (*Id.* § I.14.)

The term "incident" is defined as:

>  [A]ny negligent omission, act or error in the providing of **Professional Services**. All such omissions, errors or acts causally related to the rendering of or failure to render **Professional Services** to one person shall be considered one **Incident**. Causally related acts, errors or omissions that have a common cause or form a causal chain of events shall be considered one **Incident**. An **Incident** shall be deemed to have occurred at the time of the earliest act, error or omission comprising that **Incident**. (*Id.* § I.13.)

The term "Professional Services" is defined as:

>  [T]he diagnosis of, treatment or medical care for or medical consultation regarding a patient's medical condition. (*Id.* § I.23.)

Relevant exclusions to coverage, as amended, are described as follows:

>  Sexual impropriety, sexual intimacy, sexual assault, sexual harassment or any other similarly defined act. However, notwithstanding the foregoing, the **Insured** shall be protected under the terms of this **Policy** as to any **Claim** and or allegation which may be covered by the **Policy** upon which any **Claim** or **Suit** may be brought against the **Insured**, for any such alleged behavior by an **Insured** unless a judgment or a final adjudication adverse to the **Insured** shall establish that such behavior occurred as an essential element of the cause of action so adjudicated. (*Id.,* Illinois Amendatory Endorsement at 1.)

>  \*   \*   \*

>  The intentional infliction of **Injury**. (*Id.* § VIII.10.)

* * *

> This Policy does not apply to punitive or exemplary
> **Damages**, fines, penalties imposed by law, or matters
> uninsurable under the law pursuant to which this
> **Policy** is construed, unless the law of the state in
> which the **Insured** is licensed to practice prohibits
> such an exclusion. (*Id.* § VIII.13.)

## II. <u>DISCUSSION</u>

### A. Legal Standard

Summary judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *See,* FED. R. CIV. P. 56(a). As both parties cite to Illinois law and the Court finds Illinois law proper, the Court dispenses with an extensive choice-of-law analysis and applies Illinois law.

To determine whether PSIC has a duty to defend Giolas in the Ferguson lawsuit, the Court compares the facts alleged in the Underlying Complaint with the provisions of the PSIC Policy and, if the facts alleged potentially fall within the Policy's coverage, the duty to defend is triggered. *See, Amerisure Mut. Ins. Co. v. Microplastics, Inc.,* 622 F.3d 806, 810 (7th Cir. 2010). "Refusal to defend is unjustifiable unless it is clear from the face of the underlying complaint that the facts alleged do not fall potentially within the policy's coverage." *Outboard Marine Corp. v. Liberty Mut. Ins. Co.,* 607 N.E.2d 1204, 1212

(Ill. 1992). "In construing the language of the policy, the court's primary objective is to ascertain and give effect to the intent of the parties to the contract. In order to ascertain the meaning of the policy's language and the parties' intent, the court must construe the policy as a whole and take into account the type of insurance purchased, the nature of the risks involved, and the overall purpose of the contract." *Traveler's Ins. Co. v. Eljer Mfg.,* 757 N.E.2d 481, 491 (Ill. 2001) (internal citations and quotations omitted). "Both the policy terms and the allegations in the underlying complaint are liberally construed in favor of the insured, and any doubts and ambiguities are resolved against the insurer." *Microplastics,* 622 F.3d at 811 (quoting *State Farm Fire and Casualty Co. v. Perez,* 899 N.E.2d 1231, 1235 (Ill. App. Ct. 2008)). However, the "general rules that favor the insured must yield to the paramount rule of reasonable construction which guides all contract interpretations." *Ibid.* (quoting *Western States Ins. Co. v. Bobo,* 644 N.E.2d 486, 488 (Ill. App. Ct. 1994)) (internal quotation omitted).

## B.  Insurance Coverage

Under this framework, the Court turns to the Policy at issue. The Policy provides coverage for "[bodily injury, sickness, disease or death sustained by any one person] caused

by a[] [negligent omission, act or error] in the performance of [the diagnosis of, treatment or medical care for or medical consultation regarding a patient's medical condition] by [Giolas]." (*See,* Policy, §§ I-II, VIII (quoted policy definitions inserted).) PSIC argues that the Policy does not cover Giolas' alleged conduct for two reasons: (1) the Underlying Complaint does not allege negligence in the performance of professional services, and (2) the Underlying Complaint does not allege bodily injury.

Giolas contends that the sexual misconduct exception in the Policy provides coverage until a final adjudication in the underlying action establishes that sexual misconduct actually occurred in the underlying action. (*See, supra,* Policy, Illinois Amendatory Endorsement at 1.) PSIC is correct that an exception to an exclusion in an insurance policy does not create coverage. *See, Cont'l Cas. Co. v. Donald T. Bertucci, Ltd.,* 926 N.E.2d 833, 846 (Ill. App. Ct. 2010) ("[A]n exception to an exclusion does not create coverage or provide an additional basis for coverage, it only preserves coverage granted in the insuring agreement."). The Court must first determine whether the factual allegations potentially fall within the Policy's coverage. If so, then the Court considers whether any exclusions bar coverage. Accordingly, the Court considers

- 7 -

whether the factual allegations recited in the Underlying Complaint potentially fall within coverage by turning to the first of PSIC's arguments.

### 1. *Professional Malpractice*

PSIC argues that the Policy does not provide coverage because the Underlying Complaint does not allege negligent performance of professional services. PSIC correctly notes that the Underlying Complaint does not assert a negligence claim. However, when considering whether an insurance company has a duty to defend, a court "should not simply look to the particular legal theories pursued by the claimant [in the underlying action], but must focus on the allegedly tortious conduct on which the lawsuit is based." *Medmarc Cas. Ins. Co. v. Avent America, Inc.,* 612 F.3d 607, 613 (7th Cir. 2010) (applying Illinois law) (internal quotations omitted); *see also, Health Care Indus. Liab. Ins. Program v. Momence Meadows Nursing Ctr., Inc.,* 566 F.3d 689, 696 (7th Cir. 2009) ("[T]he factual allegations in the complaint, and not the legal labels a plaintiff uses, control.") (citation omitted) (applying Illinois law). This is because the duty to defend "should not hinge on the draftsmanship skills or whims of the plaintiff in the underlying action." *Int'l Ins. Co. v. Rollprint Packaging Prods., Inc.,* 728 N.E.2d 680, 688 (Ill. App. Ct. 2000). Thus,

Ferguson's failure to assert a separate count for negligence is not dispositive.

Giolas argues that Ferguson's allegations of improper drug treatment and poor recordkeeping bring the Underlying Complaint within potential coverage for professional negligence. Specifically, Giolas points to Ferguson's allegation that "medical records were not carefully kept and that the mixture of drugs [Giolas] had prescribed for [Ferguson] could be dangerous." (Underlying Complaint, ¶ 14.)  Though these factual allegations could potentially constitute medical malpractice, "factual allegations are only important insofar as they point to a theory of recovery." *Momence Meadows,* 566 F.3d at 696. Ferguson does not seek to recover for Giolas' alleged prescription of a potentially dangerous mixture of drugs or failure to keep proper records.  Rather, the theories of recovery in the Underlying Complaint all relate to Giolas' sexual misconduct while treating Ferguson.  The duty to defend is not triggered by "a free-standing reference to a fact … not attached to any particular theory of recovery. . . ." *Westfield Ins. Co. v. W. Van Buren, LLC,* 59 N.E.3d 877, 885 (Ill. App. Ct. 2016); *see also, Ill. Emcasco Ins. Co. v. Northwestern Nat'l Cas. Co.,* 785 N.E.2d 905, 908 (Ill. App. Ct. 2003) (noting that a duty to defend arises "if the insurance covers the liability

on any set of facts consistent with the allegations needed to support recovery on any theory raised in the complaint"). Accordingly, tangential allegations of fact regarding drugs and records do not potentially bring the Underlying Complaint within the Policy's coverage.

The crux of this coverage dispute is whether improper sexual activity with a patient can constitute medical negligence in the field of psychiatry. Generally, improper sexual activity between a medical doctor and his or her patient does not fall within "professional services" because improper sexual activity does not involve professional medical training, skill, or experience. *See, e.g., B.A. v. Bohlmann,* No. 09 C 346, 2010 U.S. Dist. LEXIS 13284, at *8 (W.D. Wis. Feb. 16, 2010) (finding no professional liability coverage for medical doctor's alleged sexual assault of patients). However, there is a distinction between medical doctors and psychiatrists. "The fiduciary duty owed by a psychotherapist exists due to the very nature of the therapist-patient relationship which gives rise to a clear duty on the therapist's part to engage only in activity or conduct which is calculated to improve the patient's mental or emotional well-being, and to refrain from any activity or conduct which carries with it a foreseeable and unreasonable risk of mental or emotional harm to the patient." *St. Paul Fire & Marine Ins. Co.*

*v. Downs,* 617 N.E.2d 338, 344 (Ill. App. Ct. 1993) (alterations and quotation omitted). The relationship between a medical doctor and a patient is different from that between a psychiatrist and a patient due to the recognized phenomenon of transference. *See,* 9A, Steven Plitt et al., *Couch on Ins.* § 131:12 (3d ed. 2017). The Illinois Supreme Court discussed transference as follows:

> The "transference phenomenon" . . . has been defined in psychiatric practice as a phenomenon . . . by which the patient transfers feelings toward everyone else to the doctor, who then must react with a proper response, the countertransference, in order to avoid emotional involvement and assist the patient in overcoming problems. The mishandling of this phenomenon, which generally results in sexual relations or involvement between the psychiatrist or therapist and the patient, has uniformly been considered as malpractice or gross negligence in other jurisdictions, whether the sexual relations were prescribed by the doctor as part of the therapy, or occurred outside the scope of treatment.

*Corgan v. Muehling,* 574 N.E.2d 602, 607 (Ill. 1991) (internal quotations and citations omitted). The *Corgan* Court went on to hold that a former patient did state a cause of action where she alleged, among other things, "that the defendant [psychologist] was . . . negligent by having sexual relations with her during the course of her treatment; and that the defendant [psychologist] failed to recognize or properly deal with the psychotherapeutic phenomenon of transference and

countertransference." *Id.* at 606-07. "Indeed, courts that have dealt with therapists' mishandling of the transference phenomenon and the concomitant therapist-patient sexual relationship have recognized that the sexual relationship simply cannot be viewed separately from other aspects of the therapist's malpractice or the therapeutic relationship developed between the therapist and the patient." *Am. Home Assurance Co. v. Stone,* 61 F.3d 1321, 1330 (7th Cir. 1995) (citations omitted); *see also, St. Paul Fire & Marine Ins. Co. v. Love,* 459 N.W.2d 698, 702 (Minn. 1990) ("When . . . the transference phenomenon pervades the therapeutic alliance, we believe the sexual conduct between therapist and patient arising from the phenomenon may be viewed as the consequence of a failure to provide proper treatment of the transference."); *L.L. v. Med. Protective Co.,* 362 N.W.2d 174, 178 (Wis. Ct. App. 1984) ("[A] sexual relationship between therapist and patient cannot be viewed separately from the therapeutic relationship that has developed between them").

The Underlying Complaint alleges that Giolas was treating Ferguson for "attention deficit disorder, recurrent major depression disorder, generalized anxiety disorder and posttraumatic stress disorder." (Underlying Complaint, ¶ 10.) Further, it states that "[Giolas] repeatedly touched and invaded

[Ferguson] sexually. The conditions under which he did so were coercive because he was treating and medicating her for various psychiatric conditions at the time, giving him undue influence over her." (*Id.* at ¶ 25.) The facts alleged in the Underlying Complaint constitute improper sexual activity with a current patient by a psychiatrist. As noted by the Illinois Supreme Court, the mishandling of transference and countertransference has "uniformly been considered as malpractice or gross negligence. . . ." *Corgan,* 574 N.E.2d at 607 (quoting *Horak v. Biris,* 474 N.E.2d 13, 18 (Ill. App. Ct. 1985)); *see also, L.L.,* 362 N.W.2d at 176 ("Medical authorities are nearly unanimous in considering sexual contact between therapist and patient to be malpractice."). Giolas' failure to handle the phenomenon properly may constitute an error of professional skill in the treatment of Ferguson's psychiatric conditions. Accordingly, based on the facts here, the sexual misconduct alleged in the Underlying Complaint potentially falls within the Policy's coverage.

Due to the recognized distinction between psychiatrists and other medical professionals, the case involving sexual misconduct relied on by PSIC, *American Family Insurance Co. v. Enright,* 781 N.E.2d 394 (Ill. App. Ct 2002), is inapplicable because it involved an ultrasound technician rather than a

psychiatrist.   Three additional cases cited by Plaintiff are inapposite because they hinge on errors that did not arise from a lack of professional skill.   In *Continental Casualty Co. v. Donald T. Bertucci,* 926 N.E.2d 833 (Ill. App. Ct. 2010), a lawyer was not covered under his legal malpractice insurance for a billing dispute because billing practices are contingent to any business and do not involve any special legal skill. Similarly, in *Illinois State Bar Association Mutual Insurance Co. v. Mondo,* 911 N.E.2d 1144 (Ill. App. Ct. 2009), a lawyer was accused of impropriety based on his insurance recommendations. He was not covered under his legal malpractice policy because the omission was not related in any way to his legal skill. Finally, in *ISMIE Mutual Insurance Co. v. Michaelis Jackson & Associates, LLC,* 921 N.E.2d 1156, 1165 (Ill. App. Ct. 2009), a False Claims Act case, the court held that the misconduct at issue related to inaccuracies in Medicare claims, not improper treatment.   Conversely, the sexual misconduct alleged here may relate to Giolas' professional misconduct as a psychiatrist, and, as such, these cases do not apply.

This is not to say that a psychiatrist's sexual misconduct must be covered by insurance.   An insurance company is free to limit coverage for a psychiatrist's sexually inappropriate behavior in a professional liability policy.   *See, Stone,* 61

F.3d at 1330 (upholding limit on insurance coverage where allegations involved counselor's sexual misconduct). However, the Policy must do so clearly and explicitly.

Accordingly, construing the Policy and facts liberally, the Court finds that the facts alleged suggest an error in Giolas' professional treatment and thus fall potentially within the Policy's coverage. *See, Microplastics,* 622 F.3d at 811 ("Both the policy terms and the allegations in the underlying complaint are liberally construed in favor of the insured.").

## 2. *Bodily Injury*

PSIC also argues that the Policy does not provide coverage because the Underlying Complaint does not allege an injury as defined by the Policy. The Policy defines "Injury" as "bodily injury, sickness, disease or death sustained by any one person." PSIC contends that the Underlying Complaint complains only of emotional distress, which is not "bodily injury, sickness, disease or death." The dispute thus centers on whether claims for bodily injury are alleged in the Underlying Complaint.

Claims of emotional distress are not claims for "bodily injury" under Illinois law. *See, Momence Meadows,* 566 F.3d at 697 n. 10. It is worth noting that injuries caused by malpractice in the field of psychiatry would intuitively include claims of emotional distress as opposed to physical injuries

anticipated in the case of malpractice in a traditional doctor's office. The Court notes the incongruity of a professional liability insurance policy for a psychiatrist that does not cover emotional distress, which seems the most likely and anticipated form of damages in the event of such a doctor's malpractice. "Judges need not check their common sense at the door when interpreting insurance policies and the plain language within them. Relevant terms and provisions are not to be construed in a vacuum, and terms must be read in conjunction with the insured's reasonable expectations, the public policy behind the provisions, and the intended coverage of those provisions." *Frendreis v. Blue Cross Blue Shield of Michigan,* 873 F.Supp. 1153, 1157 (N.D. Ill. 1995); *cf. State Farm Mut. Auto. Ins. Co. v. Progressive N. Ins. Co.,* 30 N.E.3d 440, 457 n. 7 (Ill. App. Ct. 2015) (describing applicability of reasonable expectations doctrine under Illinois law); *but, cf. Landmark Am. Ins. Co. v. NIP Grp., Inc.,* 962 N.E.2d 562, 571 (Ill. App. Ct. 2011) (noting disagreement in Illinois case law regarding reasonable expectations doctrine). However, the Court need not address this incongruity here, because the Underlying Complaint alleges more than emotional injury.

The Underlying Complaint does not solely allege injuries of emotional distress, but also asserts that Giolas committed a

common law battery against Ferguson to the tune of $750,000 in actual damages. (*See,* Underlying Complaint, ¶¶ 36-39.) An allegation of battery is sufficient to allege "bodily injury." Further, in Count II, Ferguson pleads actual damages of $750,000 separate from the $750,000 she claims in emotional distress damages. (*Id.* at ¶ 35.) Thus, the Underlying Complaint does not solely allege emotional injuries, distinguishing this case from the cases cited by PSIC. *See, Momence Meadows.* 566 F.3d at 696-97 (allegations of emotional distress without any physical injury by former employees in False Claims Act case were insufficient to allege bodily injury under Illinois law); *Commercial Union Ins. Co. v. Image Control Prop. Mgmt., Inc.* 918 F.Supp. 1165, 1170-71 (N.D. Ill. 1996) (allegations of mental anguish and distress without physical injury in housing discrimination case were insufficient to allege bodily injury under Illinois law); *Univ. of Ill. v. Cont'l Cas. Co.,* 599 N.E.2d 1338, 1353 (Ill. App. Ct. 1992) (holding that coverage exists and finding the bodily injury exclusion inapplicable where no physical injury was present); *see also, United States Liab. Ins. Co. v. Sigmatek, Inc.,* No. 14 C 1747, 2015 U.S. Dist. LEXIS 21925, at *20-22 (N.D. Ill. Feb. 20, 2015) (distinguishing *Momence Meadows*). The facts alleged here are sufficient to

allege bodily injury and thus bring the allegations of the Underlying Complaint potentially within the Policy's coverage.

Furthermore, the term "bodily injury" does include injuries from rape and sexual abuse. *See,* 9, Steven Plitt et al., *Couch on Ins.* § 126:33 (3d ed. 2017). The very nature of a sexual violation requires bodily contact that is injurious, even if it is not as apparent as a wound or laceration. *Illinois State Medical Insurance Services v. Cichon,* 629 N.E.2d 822 (Ill. App. Ct. 1994), is illustrative. There, a doctor was accused of sexually assaulting minors and adults during medical exams. *Id.* at 824-25. In a declaratory judgment action brought by the doctor's malpractice insurer, the insurer argued that no coverage existed because the claimants only alleged psychological injuries and did not allege any bodily injuries. *Id.* at 829. The Illinois Appellate Court affirmed the district court's denial of summary judgment to the insurer on the issue, holding that "[g]iven the physical nature of this alleged malpractice, the trial court could not rule, as a matter of law, that no bodily injury or invasion of privacy occurred within the meaning of the policy." *Ibid.* The court followed the reasoning of a similar New Jersey case involving sexual harassment, explaining that "the emotional and psychological effects of repeated acts of sexual harassment by offensively touching an

employee's breasts and 'rear end' were covered [as bodily injury] even though the complaint alleged only 'serious emotional distress and disruption of her personal life.'" *Ibid.* (quoting *NPS Corp. v. Insurance Co. of North America*, 517 A.2d 1211, 1212 (N.J. 1986)).

The Seventh Circuit has held similarly, albeit when applying Indiana law. *See, Nat'l Fire & Cas. Co. v. West By & Through Norris*, 107 F.3d 531, 535 (7th Cir. 1997)(finding allegations of child molestation sufficient to constitute bodily injury, although the court found no coverage for other reasons); *see also, Gen. Acc. Ins. Co. of Am. v. Gastineau*, 990 F.Supp. 631, 633-35 (S.D. Ind. 1998) (allegations of sexual harassment which included physical contact were sufficient to allege "bodily injury"); *Wayne Twp. Bd. of Sch. Comm'rs v. Ind. Ins. Co.*, 650 N.E.2d 1205, 1210 (Ind. Ct. App. 1995) ("Bodily touching is inherent to child molestation and the resulting emotional injury suffered by the victim of child molestation is bodily injury."). Additionally, the physical nature of sexual misconduct has been recognized to constitute bodily injury in other jurisdictions. *See, e.g., E.E.O.C. v. S. Pub. Co.*, 894 F.2d 785, 789 (5th Cir. 1990) (affirming district court's determination that allegations stemming from assault and battery in sexual harassment case were sufficient to constitute "bodily

injury" under Mississippi law); *Allstate Ins. Co. v. McCranie,* 716 F.Supp. 1440, 1443 (S.D. Fla. 1989)(finding that sexual molestation constitutes bodily injury, although the court denied coverage on other grounds), *aff'd sub nom. Allstate Ins. Co. v. Manning,* 904 F.2d 713 (11th Cir. 1990).

*SCR Medical Transportation Services, Inc. v. Browne,* 781 N.E.2d 564, 571 (Ill. App. Ct. 2002), does not dictate the outcome of this case. *Browne* involved application of an auto insurance policy to a driver who sexually assaulted a passenger. First, the court found that allegations of negligent driving were tangential to the heart of the complaint, which centered on the sexual assault rather than the driver's method of driving. *Id.* at 569. Second, it found that the auto insurance policy did not provide coverage because no physical injuries, only fear and anxiety, were caused by the allegedly negligent driving. *Id.* at 570. *Browne* does not run parallel to this case because the sexual misconduct is at the heart of the Underlying Complaint and the injuries were allegedly caused by that misconduct. Further, *Browne*'s discussion of bodily injury was dicta. The Appellate Court had already held that the victim's "injuries from the sexual assaults did not arise out of the use, operation, or maintenance of the vehicle," precluding automobile insurance coverage. *Id.* at 568. To the extent *Browne* is

relevant, the Court finds that *Cichon, supra,* is more factually analogous to the case at hand, as it involved a professional liability policy and a doctor-patient relationship. Following *Cichon*'s reasoning, the Court finds that the facts alleged in the Underlying Complaint potentially fall within the Policy, reading both liberally in favor of the insured, as we are required to do. *See, id.; Microplastics,* 622 F.3d at 811.

Accordingly, Ferguson's allegations of sexual misconduct suffice to allege bodily injury. The Underlying Complaint alleges that: Giolas "repeatedly engaged in improper sexual activity with [Ferguson]" (*see,* Underlying Complaint ¶ 8), including "sexual intercourse," "oral sex" and "kissing or intentional touching" of private areas (*id.* ¶ 20); "[Giolas] repeatedly touched and invaded [Ferguson] sexually" (*id.* ¶ 25); "[Giolas] subjected [Ferguson] to frequent, regular and varied sexual contact," (*id.* ¶ 30); "[Giolas] repeatedly touched [Ferguson] sexually, [and] encouraged others to touch her sexually," (*id.* ¶ 33); and Giolas "coerced [Ferguson] into … sexual acts while she was under treatment for psychiatric conditions," (*id.* ¶ 33). As such, we find the Underlying Complaint alleges facts that potentially fall within the Policy's coverage, imposing on PSIC a duty to defend Giolas in

the underlying action. *See, Corgan,* 574 N.E.2d at 607; *Cichon,* 629 N.E.2d at 829.

### 3. *Sexual Conduct Exclusion*

Giolas argues that an exception to the sexual conduct exclusion is applicable. "Insurers have the burden of proving that an exclusion applies. Insureds, in turn, have the burden to prove that an exception to an exclusion restores coverage." *Santa's Best Craft, LLC v. St. Paul Fire & Marine Ins. Co.,* 611 F.3d 339, 347 (7th Cir. 2010) (citations omitted). As PSIC has not argued that the sexual misconduct exception applies, the Court does not reach the question and expresses no opinion on the application to the Underlying Complaint of exclusions, or exceptions to exclusions, in the Policy.

### 4. *Independent Counsel*

Giolas contends in his Motion for Summary Judgment that PSIC has an irreparable conflict, requiring it to provide him with independent counsel. Where there is an "insurmountable conflict" between insured and insurer, the insurer does not have a right to control the insured's defense. *Illinois Mun. League Risk Mgmt. Ass'n v. Siebert,* 585 N.E.2d 1130, 1135 (Ill. App. Ct. 1992). It is true that the Policy excludes coverage for punitive damages and the Underlying Complaint requests punitive damages. (*See,* Policy, § VIII.13; Underlying Complaint, ¶¶ 26,

35.)  Additionally, the sexual misconduct exception may place the insured and the insurer in conflict where a factual finding of sexual misconduct may relieve the insurer of its duty to indemnify.  (*See,* Policy, Illinois Amendatory Endorsement at 1.) PSIC fails to address the merits of Giolas' argument for independent counsel.  (*See,* PSIC's Resp. to Mot. Summ. J., ECF No. 24, at 4 n. 1.)  By doing so, PSIC waives any argument in opposition.  *See, C & N Corp. v. Kane,* 756 F.3d 1024, 1026 (7th Cir. 2014) (finding failure to make an argument in response to a summary judgment motion constituted a waiver of that argument); *Bonte v. U.S. Bank, N.A.,* 624 F.3d 461, 466 (7th Cir. 2010) ("Failure to respond to an argument . . . results in waiver."). Accordingly, the Court finds that Giolas is entitled to independent counsel.

### III.  CONCLUSION

For the reasons stated herein, Defendant Giolas' Motion for Summary Judgment [ECF No. 22] is granted and Plaintiff's Motion for Summary Judgment [ECF No. 18] is denied.

**IT IS SO ORDERED.**

_____
Harry D. Leinenweber, Judge
United States District Court

Dated: November 8, 2017