## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| PROFESSIONAL SOLUTIONS INSURANCE COMPANY, | ) ) | Case No. 16-cv-09868 |
| Plaintiff, | ) | District Judge: |
| v. | ) ) | The Hon. Harry D. Leinenweber |
| DALE GIOLAS, M.D., and STACI FERGUSON, | ) | Magistrate Judge: |
| Defendants. | ) | The Hon. Jeffrey T. Gilbert |

### PLAINTIFF, PROFESSIONAL SOLUTIONS INSURANCE COMPANY's MOTION FOR ENTRY OF JUDGMENT PURSUANT TO FRCP 58(d) OR, IN THE ALTERNATIVE, FOR ENTRY OF THE FINAL JUDGMENT ON THE DUTY TO DEFEND DEFENDANT GIOLAS PURSUANT TO FRCP 54(b)

NOW COMES the Plaintiff, PROFESSIONAL SOLUTIONS INSURANCE COMPANY ("PSIC"), and pursuant to Federal Rule of Civil Procedure 58(d), requests that the Court enter judgment in favor of Defendants on the duty to defend Defendant, DALE GIOLAS ("Giolas") in Defendant, STACI FERGUSON's ("Ferguson") underlying lawsuit in accordance with the Court's Memorandum Opinion and Order dated November 8, 2017. In the alternative, Plaintiff requests that the Court enter a final judgment pursuant to Federal Rule of Civil Procedure 54(b) in favor of Defendant Giolas on the duty to defend Defendant Giolas in Defendant Ferguson's underlying lawsuit in accordance with the Court's Memorandum Opinion and Order dated November 8, 2017. In support of this motion, Plaintiff states as follows:

1. On November 8, 2017, the Court entered an Order (ECF No. 29) granting Defendant Giolas' Motion for Summary Judgment (ECF No. 22) and denying Plaintiff's Motion for Summary Judgment (ECF No. 18). The issues decided in the Court's Order are that PSIC has a duty to defend GIOLAS in the *Ferguson* lawsuit (ECF No. 29, p. 21-22) and that Giolas is entitled to independent counsel to defend him in the *Ferguson* lawsuit (ECF No. 29, p. 23). A copy of the Court's Memorandum Opinion and Order are attached as Exhibit A.

2. The Court's November 8, 2017 Order makes no findings concerning Defendant Ferguson. As such, it is not a final judgment as to all parties from which an appeal can be taken pursuant to Federal Rule of Appellate Procedure 4.

3. Ferguson is the underlying tort plaintiff in the lawsuit against Giolas which is pending in the Circuit Court of Cook County and as such, is a necessary party in this declaratory judgment action. *Society of Mount Carmel v. National Ben Franklin Ins. Co. of Ill.*, 268 Ill.App.3d 655 (1st Dist. 1994). Ferguson filed an answer to Plaintiff's complaint for declaratory judgment but did not file a motion for summary judgment or join in the motion for summary judgment filed by Giolas. A copy of the Ferguson Answer is attached as Exhibit B.

4. The Answer filed by Ferguson does not raise any new or additional claims which were not raised by Giolas and addressed by the Court in its ruling on Giolas' motion for summary judgment; thus, the Court's November 8, 2017 Order should be considered final as to both Giolas and Ferguson, and the Court should enter judgment pursuant to FRCP 58(a) in accordance with the November 8, 2017 Order.

5. In the alternative, and pursuant to FRCP 54(b), the Court should enter a final judgment in favor of Giolas on PSIC's duty to defend Giolas in the *Ferguson* lawsuit, and find that there is no just reason to delay the entry of judgment in favor of Giolas on this claim. Between Giolas (and Ferguson) and PSIC, the only issue that remains is PSIC's duty to indemnify Giolas in the *Ferguson* lawsuit. This issue is not ripe for a determination, and will not be ripe until the *Ferguson* lawsuit is resolved in the Circuit Court of Cook County. *Outboard Marine Corp. v. Liberty Mutual Ins. Co.*, 154 Ill.2d 90, 127 (1993) ("[T]he question of whether the insurer has a duty to indemnify the insured for a particular liability is only ripe for consideration if the insured has already incurred liability in the underlying claim against it."); *Nautilus Ins. Co. v. Vuk Builders, Inc.*, 406 F.Supp.2d 899, 906-07 (N.D. Ill. 2005). Because the duty to defend is separate from the duty to indemnify, see *Keystone Consolidated Industries, Inc. v. Employers Insurance Company of Wausau*, 456 F.3d 758 (7th Cir. 2006), and because the duty to indemnify cannot be addressed

2

by the Court at this time, there is no just reason to delay enforcement or appeal of the Court's November 8, 2017 order.

WHEREFORE, Plaintiff, PROFESSIONAL SOLUTIONS INSURANCE COMPANY, requests that this Court enter judgment pursuant to FRCP 58(a), finding and declaring that PSIC has a duty to defend Giolas in the *Ferguson* lawsuit, and that Giolas is entitled to independent counsel for his defense or, in the alternative, pursuant to FRCP 54(b), enter a final judgment in favor of Giolas finding and declaring that PSIC has a duty to defend Giolas in the *Ferguson* lawsuit, and that Giolas is entitled to independent counsel.

Respectfully submitted,

By:

/s/ Thomas F. Lucas
One of the Attorneys for Plaintiff,
PROFESSIONAL SOLUTIONS
INSURANCE COMPANY

Thomas F. Lucas, Esq.
Kelly E. Purkey, Esq.
McKenna Storer
33 North LaSalle Street
Suite 1400
Chicago, Illinois 60602
312/558-3900
service@mckenna-law.com
tlucas@mckenna-law.com
kpurkey@mckenna-law.com

## CERTIFICATE OF SERVICE

I certify that on December 6, 2017 before 5:00 p.m., I electronically filed the foregoing **Plaintiff, PROFESSIONAL SOLUTIONS INSURANCE COMPANY's MOTION FOR ENTRY OF JUDGMENT PURSUANT TO FRCP 58(d) OR, IN THE ALTERNATIVE, FOR ENTRY OF THE FINAL JUDGMENT ON THE DUTY TO DEFEND DEFENDANT GIOLAS PURSUANT TO FRCP 54(b)** with the Clerk of the Court using the CM/ECF System.

I further certify that on December 6, 2017 before 5:00 p.m., a copy of the foregoing **Plaintiff, PROFESSIONAL SOLUTIONS INSURANCE COMPANY's MOTION FOR ENTRY OF JUDGMENT PURSUANT TO FRCP 58(d) OR, IN THE ALTERNATIVE, FOR ENTRY OF THE FINAL JUDGMENT ON THE DUTY TO DEFEND DEFENDANT GIOLAS PURSUANT TO FRCP 54(b)** was served via the CM/ECF System to:

*Attorney for Defendant, Staci Ferguson*
Lawrence Seiwert, Esq.
33 North LaSalle Street
Suite 2200
Chicago, Illinois    60602
312/236-3663 (Phone)


*Attorney for Defendant, Dale Giolas, M.D.*
Richard D. Grossman, Esq.
Law Offices of Richard D. Grossman
211 West Wacker Drive
Suite 710
Chicago, Illinois    60606
312/750-9308 (Phone)


/s/      Thomas F. Lucas
         Thomas F. Lucas, IL- No. 03122691
         McKenna Storer
         33 North LaSalle Street
         Suite 1400
         Chicago, Illinois    60602
         312/558-3900 (Phone)
         tlucas@mckenna-law.com
         Attorney for Plaintiff

4

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

PROFESSIONAL SOLUTION
INSURANCE COMPANY,

Plaintiff,

v.

DALE GIOLAS, M.D. and
STACI FERGUSON,

Defendants.

Case No.   16 C 9868

Judge Harry D. Leinenweber

## MEMORANDUM OPINION AND ORDER

This is an insurance coverage dispute arising out of a psychiatrist's alleged sexual misconduct with a patient. Before the Court are Cross Motions for Summary Judgment [ECF Nos. 18-19, 22].   For the reasons stated herein, the Court grants Defendant Giolas' Motion and denies Plaintiff's Motion.

## I. FACTUAL BACKGROUND

Plaintiff Professional Solutions Insurance Company ("PSIC") brought a declaratory action seeking a declaration that it does not have a duty to defend Defendant Dale Giolas, M.D. ("Giolas") in an Illinois state court lawsuit.   For the purposes of the coverage dispute and the cross motions before the Court, the facts are undisputed.   Both parties filed Rule 56.1(a)(3) statements, but neither filed a Local Rule 56.1(b) response. *See,* N.D. Ill. L.R. 56.1(a)(3)(C) ("All material facts set forth


EXHIBIT
A

in the statement required of the moving party will be deemed to be admitted unless controverted by the [L.R. 56.1(b)] statement of the opposing party."). As such, the Court considers the facts contained in both parties' statements admitted. The Court does not deem any legal conclusions admitted. The facts of the underlying state court action are as follows.

Giolas, a licensed psychiatrist, treated Staci Ferguson ("Ferguson") as a patient from 2011 until early 2016. (*See,* PSIC's 56.1(a)(3) Statement, ECF No. 20 ("PSIC's Fact Statement") ¶ 4.) On August 25, 2016, Ferguson brought a lawsuit in Illinois state court alleging that Giolas repeatedly engaged in improper sexual activity with her while he was treating her. (*See,* Giolas' 56.1(a)(3) Statement, ECF No. 21 ("Giolas' Fact Statement") ¶¶ 1-2; PSIC's Fact Statement ¶¶ 3-4.) Ferguson alleged that Giolas' improper sexual activity violated the Sexual Exploitation in Psychotherapy, Professional Health Services, and Professional Mental Health Services Act, 740 ILCS 140/1 *et seq.*, the Gender Violence Act, 740 ILCS 82/1 *et seq.*, and constituted common law battery. (*See,* Complaint, Ex. A to "Complaint for Declaratory Judgment," ECF No. 1 (the "Underlying Complaint"); *see also,* Giolas' Fact Statement ¶ 1.) Both parties acknowledge that Giolas denies engaging in any sexual activity with Ferguson. (*See,* Giolas' Fact Statement

- 2 -

¶ 3; PSIC's Fact Statement ¶ 5.)  After receiving notice of the Underlying Complaint, Giolas tendered it to PSIC, his professional liability insurer.  The underlying state court case remains pending.  (*See*, Giolas' Fact Statement ¶ 4.)

The insurance policy at issue, entitled Physician and Surgeon Medical Professional Liability Insurance Policy (the "Policy"), was issued by PSIC to Giolas and was in effect when Ferguson filed the Underlying Complaint.  (*See*, Policy, Ex. B to Complaint, ECF No. 1 (the "Policy"); PSIC's Fact Statement ¶ 12; Giolas' Fact Statement ¶ 5.)  The policy states, in relevant part:

**Section II. Coverage Agreement**

Within the limit of liability shown on the **Declarations:**

In return for payment of premium and subject to all the terms of this **Policy** and the exclusions stated in **Section VIII. Exclusions**, We will pay on behalf of an **Insured** all sums in excess of the **Deductible** to which this insurance applies and for which an **Insured** becomes legally obligated to pay as **Damages** because of an **Injury** caused by an **Incident** in the performance of **Professional Services** by **You** or someone for whom **You** are legally responsible as provided in this **Policy**. The **Injury** must occur on or after the **Retroactive Date** shown on the **Declarations** and before this **Policy** or coverage for an **Insured** terminates.  Any **Claim** associated with an **Injury** caused by an **Incident** must be first reported to **Us** in writing during the **Policy Period** or the **Automatic Extended Reporting Period**. The **Injury** must also be caused by an **Insured** under this **Policy**.  (*See*, Policy § II.)

- 3 -

The term "Injury" is defined as:

> [B]odily injury, sickness, disease or death sustained by any one person. (*Id.* § I.14.)

The term "incident" is defined as:

> [A]ny negligent omission, act or error in the providing of **Professional Services**. All such omissions, errors or acts causally related to the rendering of or failure to render **Professional Services** to one person shall be considered one **Incident**. Causally related acts, errors or omissions that have a common cause or form a causal chain of events shall be considered one **Incident**. An **Incident** shall be deemed to have occurred at the time of the earliest act, error or omission comprising that **Incident**. (*Id.* § I.13.)

The term "Professional Services" is defined as:

> [T]he diagnosis of, treatment or medical care for or medical consultation regarding a patient's medical condition. (*Id.* § I.23.)

Relevant exclusions to coverage, as amended, are described as follows:

> Sexual impropriety, sexual intimacy, sexual assault, sexual harassment or any other similarly defined act. However, notwithstanding the foregoing, the **Insured** shall be protected under the terms of this **Policy** as to any **Claim** and or allegation which may be covered by the **Policy** upon which any **Claim** or **Suit** may be brought against the **Insured**, for any such alleged behavior by an **Insured** unless a judgment or a final adjudication adverse to the **Insured** shall establish that such behavior occurred as an essential element of the cause of action so adjudicated. (*Id.,* Illinois Amendatory Endorsement at 1.)

* * *

> The intentional infliction of **Injury**. (*Id.* § VIII.10.)

\* \* \*

This Policy does not apply to punitive or exemplary **Damages**, fines, penalties imposed by law, or matters uninsurable under the law pursuant to which this **Policy** is construed, unless the law of the state in which the **Insured** is licensed to practice prohibits such an exclusion. (*Id.* § VIII.13.)

## II.  DISCUSSION

### A.  Legal Standard

Summary judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *See,* FED. R. CIV. P. 56(a). As both parties cite to Illinois law and the Court finds Illinois law proper, the Court dispenses with an extensive choice-of-law analysis and applies Illinois law.

To determine whether PSIC has a duty to defend Giolas in the Ferguson lawsuit, the Court compares the facts alleged in the Underlying Complaint with the provisions of the PSIC Policy and, if the facts alleged potentially fall within the Policy's coverage, the duty to defend is triggered. *See, Amerisure Mut. Ins. Co. v. Microplastics, Inc.,* 622 F.3d 806, 810 (7th Cir. 2010). "Refusal to defend is unjustifiable unless it is clear from the face of the underlying complaint that the facts alleged do not fall potentially within the policy's coverage." *Outboard Marine Corp. v. Liberty Mut. Ins. Co.,* 607 N.E.2d 1204, 1212

(Ill. 1992). "In construing the language of the policy, the court's primary objective is to ascertain and give effect to the intent of the parties to the contract. In order to ascertain the meaning of the policy's language and the parties' intent, the court must construe the policy as a whole and take into account the type of insurance purchased, the nature of the risks involved, and the overall purpose of the contract." *Traveler's Ins. Co. v. Eljer Mfg.,* 757 N.E.2d 481, 491 (Ill. 2001) (internal citations and quotations omitted). "Both the policy terms and the allegations in the underlying complaint are liberally construed in favor of the insured, and any doubts and ambiguities are resolved against the insurer." *Microplastics,* 622 F.3d at 811 (quoting *State Farm Fire and Casualty Co. v. Perez,* 899 N.E.2d 1231, 1235 (Ill. App. Ct. 2008)). However, the "general rules that favor the insured must yield to the paramount rule of reasonable construction which guides all contract interpretations." *Ibid.* (quoting *Western States Ins. Co. v. Bobo,* 644 N.E.2d 486, 488 (Ill. App. Ct. 1994)) (internal quotation omitted).

## B. Insurance Coverage

Under this framework, the Court turns to the Policy at issue. The Policy provides coverage for "[bodily injury, sickness, disease or death sustained by any one person] caused

- 6 -

by a[] [negligent omission, act or error] in the performance of [the diagnosis of, treatment or medical care for or medical consultation regarding a patient's medical condition] by [Giolas]." (*See,* Policy, §§ I-II, VIII (quoted policy definitions inserted).) PSIC argues that the Policy does not cover Giolas' alleged conduct for two reasons: (1) the Underlying Complaint does not allege negligence in the performance of professional services, and (2) the Underlying Complaint does not allege bodily injury.

Giolas contends that the sexual misconduct exception in the Policy provides coverage until a final adjudication in the underlying action establishes that sexual misconduct actually occurred in the underlying action. (*See, supra,* Policy, Illinois Amendatory Endorsement at 1.) PSIC is correct that an exception to an exclusion in an insurance policy does not create coverage. *See, Cont'l Cas. Co. v. Donald T. Bertucci, Ltd.,* 926 N.E.2d 833, 846 (Ill. App. Ct. 2010) ("[A]n exception to an exclusion does not create coverage or provide an additional basis for coverage, it only preserves coverage granted in the insuring agreement."). The Court must first determine whether the factual allegations potentially fall within the Policy's coverage. If so, then the Court considers whether any exclusions bar coverage. Accordingly, the Court considers

- 7 -

whether the factual allegations recited in the Underlying Complaint potentially fall within coverage by turning to the first of PSIC's arguments.

### 1. *Professional Malpractice*

PSIC argues that the Policy does not provide coverage because the Underlying Complaint does not allege negligent performance of professional services. PSIC correctly notes that the Underlying Complaint does not assert a negligence claim. However, when considering whether an insurance company has a duty to defend, a court "should not simply look to the particular legal theories pursued by the claimant [in the underlying action], but must focus on the allegedly tortious conduct on which the lawsuit is based." *Medmarc Cas. Ins. Co. v. Avent America, Inc.,* 612 F.3d 607, 613 (7th Cir. 2010) (applying Illinois law) (internal quotations omitted); *see also, Health Care Indus. Liab. Ins. Program v. Momence Meadows Nursing Ctr., Inc.,* 566 F.3d 689, 696 (7th Cir. 2009) ("[T]he factual allegations in the complaint, and not the legal labels a plaintiff uses, control.") (citation omitted) (applying Illinois law). This is because the duty to defend "should not hinge on the draftsmanship skills or whims of the plaintiff in the underlying action." *Int'l Ins. Co. v. Rollprint Packaging Prods., Inc.,* 728 N.E.2d 680, 688 (Ill. App. Ct. 2000). Thus,

- 8 -

Ferguson's failure to assert a separate count for negligence is not dispositive.

Giolas argues that Ferguson's allegations of improper drug treatment and poor recordkeeping bring the Underlying Complaint within potential coverage for professional negligence. Specifically, Giolas points to Ferguson's allegation that "medical records were not carefully kept and that the mixture of drugs [Giolas] had prescribed for [Ferguson] could be dangerous." (Underlying Complaint, ¶ 14.) Though these factual allegations could potentially constitute medical malpractice, "factual allegations are only important insofar as they point to a theory of recovery." *Momence Meadows,* 566 F.3d at 696. Ferguson does not seek to recover for Giolas' alleged prescription of a potentially dangerous mixture of drugs or failure to keep proper records. Rather, the theories of recovery in the Underlying Complaint all relate to Giolas' sexual misconduct while treating Ferguson. The duty to defend is not triggered by "a free-standing reference to a fact … not attached to any particular theory of recovery. . . . " *Westfield Ins. Co. v. W. Van Buren, LLC,* 59 N.E.3d 877, 885 (Ill. App. Ct. 2016); *see also, Ill. Emcasco Ins. Co. v. Northwestern Nat'l Cas. Co.,* 785 N.E.2d 905, 908 (Ill. App. Ct. 2003) (noting that a duty to defend arises "if the insurance covers the liability

- 9 -

on any set of facts consistent with the allegations needed to support recovery on any theory raised in the complaint"). Accordingly, tangential allegations of fact regarding drugs and records do not potentially bring the Underlying Complaint within the Policy's coverage.

The crux of this coverage dispute is whether improper sexual activity with a patient can constitute medical negligence in the field of psychiatry. Generally, improper sexual activity between a medical doctor and his or her patient does not fall within "professional services" because improper sexual activity does not involve professional medical training, skill, or experience. *See, e.g., B.A. v. Bohlmann,* No. 09 C 346, 2010 U.S. Dist. LEXIS 13284, at *8 (W.D. Wis. Feb. 16, 2010) (finding no professional liability coverage for medical doctor's alleged sexual assault of patients). However, there is a distinction between medical doctors and psychiatrists. "The fiduciary duty owed by a psychotherapist exists due to the very nature of the therapist-patient relationship which gives rise to a clear duty on the therapist's part to engage only in activity or conduct which is calculated to improve the patient's mental or emotional well-being, and to refrain from any activity or conduct which carries with it a foreseeable and unreasonable risk of mental or emotional harm to the patient." *St. Paul Fire & Marine Ins. Co.*

*v. Downs,* 617 N.E.2d 338, 344 (Ill. App. Ct. 1993) (alterations and quotation omitted). The relationship between a medical doctor and a patient is different from that between a psychiatrist and a patient due to the recognized phenomenon of transference. *See,* 9A, Steven Plitt et al., *Couch on Ins.* § 131:12 (3d ed. 2017). The Illinois Supreme Court discussed transference as follows:

> The "transference phenomenon" . . . has been defined in psychiatric practice as a phenomenon . . . by which the patient transfers feelings toward everyone else to the doctor, who then must react with a proper response, the countertransference, in order to avoid emotional involvement and assist the patient in overcoming problems. The mishandling of this phenomenon, which generally results in sexual relations or involvement between the psychiatrist or therapist and the patient, has uniformly been considered as malpractice or gross negligence in other jurisdictions, whether the sexual relations were prescribed by the doctor as part of the therapy, or occurred outside the scope of treatment.

*Corgan v. Muehling,* 574 N.E.2d 602, 607 (Ill. 1991) (internal quotations and citations omitted). The *Corgan* Court went on to hold that a former patient did state a cause of action where she alleged, among other things, "that the defendant [psychologist] was . . . negligent by having sexual relations with her during the course of her treatment; and that the defendant [psychologist] failed to recognize or properly deal with the psychotherapeutic phenomenon of transference and

- 11 -

countertransference." *Id.* at 606-07. "Indeed, courts that have dealt with therapists' mishandling of the transference phenomenon and the concomitant therapist-patient sexual relationship have recognized that the sexual relationship simply cannot be viewed separately from other aspects of the therapist's malpractice or the therapeutic relationship developed between the therapist and the patient." *Am. Home Assurance Co. v. Stone,* 61 F.3d 1321, 1330 (7th Cir. 1995) (citations omitted); *see also, St. Paul Fire & Marine Ins. Co. v. Love,* 459 N.W.2d 698, 702 (Minn. 1990) ("When . . . the transference phenomenon pervades the therapeutic alliance, we believe the sexual conduct between therapist and patient arising from the phenomenon may be viewed as the consequence of a failure to provide proper treatment of the transference."); *L.L. v. Med. Protective Co.,* 362 N.W.2d 174, 178 (Wis. Ct. App. 1984) ("[A] sexual relationship between therapist and patient cannot be viewed separately from the therapeutic relationship that has developed between them").

The Underlying Complaint alleges that Giolas was treating Ferguson for "attention deficit disorder, recurrent major depression disorder, generalized anxiety disorder and posttraumatic stress disorder." (Underlying Complaint, ¶ 10.) Further, it states that "[Giolas] repeatedly touched and invaded

[Ferguson] sexually. The conditions under which he did so were coercive because he was treating and medicating her for various psychiatric conditions at the time, giving him undue influence over her." (*Id.* at ¶ 25.) The facts alleged in the Underlying Complaint constitute improper sexual activity with a current patient by a psychiatrist. As noted by the Illinois Supreme Court, the mishandling of transference and countertransference has "uniformly been considered as malpractice or gross negligence. . . ." *Corgan*, 574 N.E.2d at 607 (quoting *Horak v. Biris*, 474 N.E.2d 13, 18 (Ill. App. Ct. 1985)); *see also, L.L.*, 362 N.W.2d at 176 ("Medical authorities are nearly unanimous in considering sexual contact between therapist and patient to be malpractice."). Giolas' failure to handle the phenomenon properly may constitute an error of professional skill in the treatment of Ferguson's psychiatric conditions. Accordingly, based on the facts here, the sexual misconduct alleged in the Underlying Complaint potentially falls within the Policy's coverage.

Due to the recognized distinction between psychiatrists and other medical professionals, the case involving sexual misconduct relied on by PSIC, *American Family Insurance Co. v. Enright*, 781 N.E.2d 394 (Ill. App. Ct 2002), is inapplicable because it involved an ultrasound technician rather than a

psychiatrist. Three additional cases cited by Plaintiff are inapposite because they hinge on errors that did not arise from a lack of professional skill. In *Continental Casualty Co. v. Donald T. Bertucci,* 926 N.E.2d 833 (Ill. App. Ct. 2010), a lawyer was not covered under his legal malpractice insurance for a billing dispute because billing practices are contingent to any business and do not involve any special legal skill. Similarly, in *Illinois State Bar Association Mutual Insurance Co. v. Mondo,* 911 N.E.2d 1144 (Ill. App. Ct. 2009), a lawyer was accused of impropriety based on his insurance recommendations. He was not covered under his legal malpractice policy because the omission was not related in any way to his legal skill. Finally, in *ISMIE Mutual Insurance Co. v. Michaelis Jackson & Associates, LLC,* 921 N.E.2d 1156, 1165 (Ill. App. Ct. 2009), a False Claims Act case, the court held that the misconduct at issue related to inaccuracies in Medicare claims, not improper treatment. Conversely, the sexual misconduct alleged here may relate to Giolas' professional misconduct as a psychiatrist, and, as such, these cases do not apply.

This is not to say that a psychiatrist's sexual misconduct must be covered by insurance. An insurance company is free to limit coverage for a psychiatrist's sexually inappropriate behavior in a professional liability policy. *See, Stone,* 61

- 14 -

F.3d at 1330 (upholding limit on insurance coverage where allegations involved counselor's sexual misconduct). However, the Policy must do so clearly and explicitly.

Accordingly, construing the Policy and facts liberally, the Court finds that the facts alleged suggest an error in Giolas' professional treatment and thus fall potentially within the Policy's coverage. *See, Microplastics,* 622 F.3d at 811 ("Both the policy terms and the allegations in the underlying complaint are liberally construed in favor of the insured.").

### 2. *Bodily Injury*

PSIC also argues that the Policy does not provide coverage because the Underlying Complaint does not allege an injury as defined by the Policy. The Policy defines "Injury" as "bodily injury, sickness, disease or death sustained by any one person." PSIC contends that the Underlying Complaint complains only of emotional distress, which is not "bodily injury, sickness, disease or death." The dispute thus centers on whether claims for bodily injury are alleged in the Underlying Complaint.

Claims of emotional distress are not claims for "bodily injury" under Illinois law. *See, Momence Meadows,* 566 F.3d at 697 n. 10. It is worth noting that injuries caused by malpractice in the field of psychiatry would intuitively include claims of emotional distress as opposed to physical injuries

- 15 -

anticipated in the case of malpractice in a traditional doctor's office. The Court notes the incongruity of a professional liability insurance policy for a psychiatrist that does not cover emotional distress, which seems the most likely and anticipated form of damages in the event of such a doctor's malpractice. "Judges need not check their common sense at the door when interpreting insurance policies and the plain language within them. Relevant terms and provisions are not to be construed in a vacuum, and terms must be read in conjunction with the insured's reasonable expectations, the public policy behind the provisions, and the intended coverage of those provisions." *Frendreis v. Blue Cross Blue Shield of Michigan*, 873 F.Supp. 1153, 1157 (N.D. Ill. 1995); *cf. State Farm Mut. Auto. Ins. Co. v. Progressive N. Ins. Co.*, 30 N.E.3d 440, 457 n. 7 (Ill. App. Ct. 2015) (describing applicability of reasonable expectations doctrine under Illinois law); *but, cf. Landmark Am. Ins. Co. v. NIP Grp., Inc.*, 962 N.E.2d 562, 571 (Ill. App. Ct. 2011) (noting disagreement in Illinois case law regarding reasonable expectations doctrine). However, the Court need not address this incongruity here, because the Underlying Complaint alleges more than emotional injury.

The Underlying Complaint does not solely allege injuries of emotional distress, but also asserts that Giolas committed a

- 16 -

common law battery against Ferguson to the tune of $750,000 in actual damages. (*See,* Underlying Complaint, ¶¶ 36-39.) An allegation of battery is sufficient to allege "bodily injury." Further, in Count II, Ferguson pleads actual damages of $750,000 separate from the $750,000 she claims in emotional distress damages. (*Id.* at ¶ 35.) Thus, the Underlying Complaint does not solely allege emotional injuries, distinguishing this case from the cases cited by PSIC. *See, Momence Meadows.* 566 F.3d at 696-97 (allegations of emotional distress without any physical injury by former employees in False Claims Act case were insufficient to allege bodily injury under Illinois law); *Commercial Union Ins. Co. v. Image Control Prop. Mgmt., Inc.* 918 F.Supp. 1165, 1170-71 (N.D. Ill. 1996) (allegations of mental anguish and distress without physical injury in housing discrimination case were insufficient to allege bodily injury under Illinois law); *Univ. of Ill. v. Cont'l Cas. Co.,* 599 N.E.2d 1338, 1353 (Ill. App. Ct. 1992) (holding that coverage exists and finding the bodily injury exclusion inapplicable where no physical injury was present); *see also, United States Liab. Ins. Co. v. Sigmatek, Inc.,* No. 14 C 1747, 2015 U.S. Dist. LEXIS 21925, at *20-22 (N.D. Ill. Feb. 20, 2015) (distinguishing *Momence Meadows*). The facts alleged here are sufficient to

allege bodily injury and thus bring the allegations of the Underlying Complaint potentially within the Policy's coverage.

Furthermore, the term "bodily injury" does include injuries from rape and sexual abuse. *See,* 9, Steven Plitt et al., *Couch on Ins.* § 126:33 (3d ed. 2017). The very nature of a sexual violation requires bodily contact that is injurious, even if it is not as apparent as a wound or laceration. *Illinois State Medical Insurance Services v. Cichon,* 629 N.E.2d 822 (Ill. App. Ct. 1994), is illustrative. There, a doctor was accused of sexually assaulting minors and adults during medical exams. *Id.* at 824-25. In a declaratory judgment action brought by the doctor's malpractice insurer, the insurer argued that no coverage existed because the claimants only alleged psychological injuries and did not allege any bodily injuries. *Id.* at 829. The Illinois Appellate Court affirmed the district court's denial of summary judgment to the insurer on the issue, holding that "[g]iven the physical nature of this alleged malpractice, the trial court could not rule, as a matter of law, that no bodily injury or invasion of privacy occurred within the meaning of the policy." *Ibid.* The court followed the reasoning of a similar New Jersey case involving sexual harassment, explaining that "the emotional and psychological effects of repeated acts of sexual harassment by offensively touching an

- 18 -

employee's breasts and 'rear end' were covered [as bodily injury] even though the complaint alleged only 'serious emotional distress and disruption of her personal life.'" *Ibid.* (quoting *NPS Corp. v. Insurance Co. of North America,* 517 A.2d 1211, 1212 (N.J. 1986)).

The Seventh Circuit has held similarly, albeit when applying Indiana law. *See, Nat'l Fire & Cas. Co. v. West By & Through Norris,* 107 F.3d 531, 535 (7th Cir. 1997)(finding allegations of child molestation sufficient to constitute bodily injury, although the court found no coverage for other reasons); *see also, Gen. Acc. Ins. Co. of Am. v. Gastineau,* 990 F.Supp. 631, 633-35 (S.D. Ind. 1998) (allegations of sexual harassment which included physical contact were sufficient to allege "bodily injury"); *Wayne Twp. Bd. of Sch. Comm'rs v. Ind. Ins. Co.,* 650 N.E.2d 1205, 1210 (Ind. Ct. App. 1995) ("Bodily touching is inherent to child molestation and the resulting emotional injury suffered by the victim of child molestation is bodily injury."). Additionally, the physical nature of sexual misconduct has been recognized to constitute bodily injury in other jurisdictions. *See, e.g., E.E.O.C. v. S. Pub. Co.,* 894 F.2d 785, 789 (5th Cir. 1990) (affirming district court's determination that allegations stemming from assault and battery in sexual harassment case were sufficient to constitute "bodily

injury" under Mississippi law); *Allstate Ins. Co. v. McCranie*, 716 F.Supp. 1440, 1443 (S.D. Fla. 1989)(finding that sexual molestation constitutes bodily injury, although the court denied coverage on other grounds), *aff'd sub nom. Allstate Ins. Co. v. Manning*, 904 F.2d 713 (11th Cir. 1990).

*SCR Medical Transportation Services, Inc. v. Browne*, 781 N.E.2d 564, 571 (Ill. App. Ct. 2002), does not dictate the outcome of this case. *Browne* involved application of an auto insurance policy to a driver who sexually assaulted a passenger. First, the court found that allegations of negligent driving were tangential to the heart of the complaint, which centered on the sexual assault rather than the driver's method of driving. *Id.* at 569. Second, it found that the auto insurance policy did not provide coverage because no physical injuries, only fear and anxiety, were caused by the allegedly negligent driving. *Id.* at 570. *Browne* does not run parallel to this case because the sexual misconduct is at the heart of the Underlying Complaint and the injuries were allegedly caused by that misconduct. Further, *Browne*'s discussion of bodily injury was dicta. The Appellate Court had already held that the victim's "injuries from the sexual assaults did not arise out of the use, operation, or maintenance of the vehicle," precluding automobile insurance coverage. *Id.* at 568. To the extent *Browne* is

- 20 -

relevant, the Court finds that *Cichon, supra,* is more factually analogous to the case at hand, as it involved a professional liability policy and a doctor-patient relationship. Following *Cichon*'s reasoning, the Court finds that the facts alleged in the Underlying Complaint potentially fall within the Policy, reading both liberally in favor of the insured, as we are required to do. *See, id.; Microplastics,* 622 F.3d at 811.

Accordingly, Ferguson's allegations of sexual misconduct suffice to allege bodily injury. The Underlying Complaint alleges that: Giolas "repeatedly engaged in improper sexual activity with [Ferguson]" (*see,* Underlying Complaint ¶ 8), including "sexual intercourse," "oral sex" and "kissing or intentional touching" of private areas (*id.* ¶ 20); "[Giolas] repeatedly touched and invaded [Ferguson] sexually" (*id.* ¶ 25); "[Giolas] subjected [Ferguson] to frequent, regular and varied sexual contact," (*id.* ¶ 30); "[Giolas] repeatedly touched [Ferguson] sexually, [and] encouraged others to touch her sexually," (*id.* ¶ 33); and Giolas "coerced [Ferguson] into … sexual acts while she was under treatment for psychiatric conditions," (*id.* ¶ 33). As such, we find the Underlying Complaint alleges facts that potentially fall within the Policy's coverage, imposing on PSIC a duty to defend Giolas in

the underlying action. *See, Corgan,* 574 N.E.2d at 607; *Cichon,* 629 N.E.2d at 829.

### 3. *Sexual Conduct Exclusion*

Giolas argues that an exception to the sexual conduct exclusion is applicable. "Insurers have the burden of proving that an exclusion applies. Insureds, in turn, have the burden to prove that an exception to an exclusion restores coverage." *Santa's Best Craft, LLC v. St. Paul Fire & Marine Ins. Co.,* 611 F.3d 339, 347 (7th Cir. 2010) (citations omitted). As PSIC has not argued that the sexual misconduct exception applies, the Court does not reach the question and expresses no opinion on the application to the Underlying Complaint of exclusions, or exceptions to exclusions, in the Policy.

### 4. *Independent Counsel*

Giolas contends in his Motion for Summary Judgment that PSIC has an irreparable conflict, requiring it to provide him with independent counsel. Where there is an "insurmountable conflict" between insured and insurer, the insurer does not have a right to control the insured's defense. *Illinois Mun. League Risk Mgmt. Ass'n v. Siebert,* 585 N.E.2d 1130, 1135 (Ill. App. Ct. 1992). It is true that the Policy excludes coverage for punitive damages and the Underlying Complaint requests punitive damages. (*See,* Policy, § VIII.13; Underlying Complaint, ¶¶ 26,

35.)   Additionally,  the  sexual  misconduct  exception  may  place
the  insured  and  the  insurer  in  conflict  where  a  factual  finding
of  sexual  misconduct  may  relieve  the  insurer  of  its  duty  to
indemnify.  (*See,* Policy, Illinois Amendatory Endorsement at 1.)
PSIC  fails  to  address  the  merits  of  Giolas'  argument  for
independent  counsel.  (*See,* PSIC's Resp. to Mot. Summ. J., ECF
No. 24, at 4 n. 1.)  By doing so, PSIC waives any argument in
opposition.  *See, C & N Corp. v. Kane,* 756 F.3d 1024, 1026 (7th
Cir. 2014) (finding failure to make an argument in response to a
summary judgment motion constituted a waiver of that argument);
*Bonte v. U.S. Bank, N.A.,* 624 F.3d 461, 466 (7th Cir. 2010)
("Failure to respond to an argument . . . results in waiver.").
Accordingly,  the  Court  finds  that  Giolas  is  entitled  to
independent counsel.

### III.   CONCLUSION

For  the  reasons  stated  herein,  Defendant  Giolas'  Motion  for
Summary Judgment [ECF No. 22] is granted and Plaintiff's Motion
for Summary Judgment [ECF No. 18] is denied.

**IT IS SO ORDERED.**

Harry D. Leinenweber, Judge
United States District Court

Dated: November 8, 2017

- 23 -

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

PROFESSIONAL SOLUTIONS INSURANCE )
COMPANY, )
)
     Plaintiff, )
)
v. )     No.   16-cv-09868
)
DALE GIOLAS, M.D., and STACI FERGUSON, )
)
     Defendants. )

## ANSWER TO COMPLAINT FOR DECLARATORY JUDGMENT

Now comes defendant STACI FERGUSON, and answering the Complaint for Declaratory

Judgment states as follows:

1.    Plaintiff, Professional Solutions Insurance Company (PSIC) is an Iowa

corporation and has its principal place of business in Clive, Iowa. Plaintiff is a citizen of Iowa.

    ANSWER:    Admits the allegations of paragraph 1.


2.    Defendant, Dale Giolas, M.D. (Giolas) is a resident and citizen of Illinois.

    ANSWER:    Admits the allegations of paragraph 2.


3.    Defendant, Staci Ferguson (Ferguson) is a resident and citizen of Illinois.

    ANSWER:    Admits the allegations of paragraph 3.


### Jurisdiction and Venue

4.    Jurisdiction is proper under 28 USC §1332(a)(1) since this is an action between

citizens of different states and the amount in controversy exceeds $75,000.00 exclusive of

interest and costs.

    ANSWER:    Admits the allegations of paragraph 4.



5.     Jurisdiction is also proper under 28 USC §2201(a) because a case of actual controversy exists in connection with the parties' rights and obligations under a certain insurance policy issued by PSIC to Giolas and this Court has jurisdiction to declare the rights and legal obligations of any interested party seeking relief.

ANSWER:     Admits the allegations of paragraph 5.

6.     Venue is proper in this Court pursuant to 28 USC §1391(b)(1) because the defendants reside in Illinois and in this judicial district. Venue is also proper under 28 USC §1391(b)(2) because a substantial part of the events and transactions giving rise to the claim occurred in this judicial district.

ANSWER:     Admits the allegations of paragraph 6.

## Factual Background

7.     On August 25, 2016, Staci Ferguson filed a Complaint in the Circuit Court of Cook County, Illinois naming Dale Giolas, M.D. as a defendant. A copy of the *Ferguson* Complaint is attached as Exhibit A.

ANSWER:     Admits the allegations of paragraph 7.

8.     The *Ferguson* Complaint alleges that Giolas, a medical doctor with a specialty in psychiatry, treated Ferguson from 2011 until early 2016 for attention deficit disorder, recurrent major depression disorder, generalized anxiety disorder and posttraumatic stress disorder. In 2014 Giolas allegedly began a personal relationship with Ferguson and repeatedly engaged in improper sexual activity with her, without her consent. Ferguson alleges that she reported Giolas's improper conduct to the Illinois Department of Financial and Professional Regulation (IDFPR) which resulted in a complaint being brought against Giolas by the IDFPR and a temporary suspension of Giolas's license. Ferguson also alleges that Giolas admitted to the IDFPR that he committed the inappropriate acts.

2

ANSWER:     Admits the allegations of paragraph 8.

9.     The *Ferguson* Complaint contains three Counts. Count I alleges that Giolas' improper sexual activity violated the Sexual Exploitation in Psychotherapy, Professional Health Services and Professional Mental Health Services Act, 740 ILCS 140/0.01, et seq. Count II alleges that Giolas' improper sexual activity violated the Gender Violence Act, 740 ILCS 82/1 et seq. Count III alleges that Giolas' improper sexual acts constitute Battery. The *Ferguson* Complaint alleges that Giolas's improper sexual activity caused her to suffer emotional distress and she seeks compensatory and punitive damages.

ANSWER:     Admits the allegations of paragraph 9.

## THE PSIC POLICY

10.     PSIC issued a Professional Liability Claims Made Policy to Giolas under Policy No. PPL512831, with a policy period of May 1, 2016 to May 1, 2017. The PSIC Policy was cancelled on September 30, 2016 but was in effect when Giolas provided written notice of the *Ferguson* Complaint to PSIC. The PSIC Policy is attached as Exhibit B.

ANSWER:     Admits the allegations of paragraph 10.

11.     The coverage provided by the PSIC Policy is described as follows:

### Section II. Coverage Agreement

Within the limit of liability shown on the **Declarations**:

In return for payment of premium and subject to all the terms of this **Policy** and the exclusions stated in **Section VIII. Exclusions**, **We** will pay on behalf of an **Insured** all sums in excess of the **Deductible(s)** to which this insurance applies and for which an **Insured** becomes legally obligated to pay as **Damages** because of an **Injury** caused by an **Incident** in the performance of **Professional Services** by **You** or someone for whom **You** are legally responsible as provided in this **Policy**. The **Injury** must occur on or after the **Retroactive Date** shown on the **Declarations** and before this **Policy** or coverage for an **Insured** terminates. Any **Claim** associated with an **Injury** caused by an **Incident** must be first reported to **Us** in writing during the **Policy Period** or the **Automatic Extended Reporting Period**. The **Injury** must also be caused by an **Insured** under this **Policy**.

3

ANSWER:    Admits the allegations of paragraph 11.

12.    The PSIC Policy contains the following pertinent **Definitions**:

    13.    **Incident** means any negligent omission, act or error in the providing of **Professional Services**. All such omissions, errors or acts causally related to the rendering of or failure to render **Professional Services** to one person shall be considered one **Incident**. Causally related acts, errors or omissions that have a common cause or form a causal chain of events shall be considered one **Incident**. An **Incident** shall be deemed to have occurred at the time of the earliest act, error or omission comprising that **Incident**.

    14.    **Injury** means bodily injury, sickness, disease or death sustained by any one person.

*  *  *

    23.    **Professional Services** means the diagnosis of, treatment or medical care for or medical consultation regarding a patient's medical condition.

ANSWER:    Admits the allegations of paragraph 12.

13.    The PSIC Policy contains the following pertinent Exclusions:

**Section VIII. Exclusions.**

This **Policy** does not apply to liability of an **Insured** or to any **Damages**, **Incidents**, **Claims** or **Suits** arising out of, based upon or attributable to any of the following:

*  *  *

    5.    Sexual impropriety, sexual intimacy, sexual assault, sexual harassment or any other similarly defined act.    However, notwithstanding the foregoing, the **Insured** shall be protected under the terms of this **Policy** as to any **Claim** and or allegation which may be covered by the **Policy** upon which any **Claim** or **Suit** may be brought against the **Insured**, for any such alleged behavior by an **Insured** unless a judgment or a final adjudication adverse to the Insured shall establish that such behavior occurred as an essential element of the cause of action so adjudicated. (As amended by the Illinois Amendatory Endorsement, Form PSIC-CM-IL-01 03/11.)

*  *  *

    10.    The intentional infliction of **Injury**.

4

* * *

13.     This **Policy** does not apply to punitive or exemplary **Damages**, fines, penalties imposed by law, or matters uninsurable under the law pursuant to which this **Policy** is construed, unless the law of the state in which the **Insured** is licensed to practice prohibits such an exclusion.  If a suit is brought against the **Insured** with respect to a claim for acts falling within the coverage seeking both compensatory and punitive **Damages**, then we will provide a defense to such action without liability for such punitive or exemplary **Damages**.  (As amended by the Illinois Amendatory Endorsement, Form PSCI-CM-IL-01 03/11.)

ANSWER:     Admits the allegations of paragraph 13.

### PSIC Does Not Have a Duty to Defend or Indemnify Giolas in the *Ferguson* Lawsuit

14.     PSIC does not have a duty to defend or indemnify Giolas in the *Ferguson* Lawsuit because the allegations of the *Ferguson* Complaint do not potentially come within the coverage of the PSIC Policy.

ANSWER:     Denies the allegations of paragraph 14.

15.     The allegations of the *Ferguson* Complaint do not potentially come within the coverage of the PSIC Policy because the Complaint does not seek damages because of injury caused by an incident in the performance of professional services by Giolas.

ANSWER:     Denies the allegations of paragraph 15.

16.     The allegations of the *Ferguson* Complaint do not potentially come within the coverage of the PSIC Policy because Ferguson's Sexual Exploitation, Gender Violence and Battery claims do not allege negligence in the performance of professional services by Giolas.

ANSWER:     Denies the allegations  of paragraph 16.

17.     The allegations of the *Ferguson* Complaint do not potentially come within the coverage of the PSIC Policy because Ferguson's allegation of emotional distress does not

5

allege Injury as the term is defined in the PSIC Policy. The *Ferguson* Complaint does not allege that Ferguson suffered a physical injury as a result of Giolas's improper acts; therefore, an Injury as defined in the policy is not alleged.

ANSWER: Has no knowledge concerning the allegations of paragraph 17.

18. The Sexual Impropriety exclusion of the PSIC Policy applies to bar coverage for the *Ferguson* Complaint. In addition, the *Ferguson* Complaint does not allege a claim which is potentially covered under the policy; therefore, Giolas is not entitled to coverage under the policy until the allegations of sexual impropriety are established in the IDFPR proceeding or in the *Ferguson* Lawsuit.

ANSWER: Has no knowledge concerning the allegations of paragraph 18.

19. If the Court determines that the *Ferguson* Complaint alleges an Injury as the term is defined in the PSIC Policy, then the Intentional Injury exclusion of the PSIC Policy applies to bar coverage for the *Ferguson* Complaint.

ANSWER: Denies the allegations of paragraph 19 based on the answer filed by defendant Giolas and further denies that plaintiff is entitled to any of the relief requested.

Respectfully submitted,

By:

/s/ Lawrence P. Seiwert
Attorney for Defendant
Staci Ferguson

Lawrence P. Seiwert
33 North LaSalle Street
Suite 2200
Chicago, Illinois 60602
312 236-3663

6